O

1

2

3   **UNITED STATES DISTRICT COURT**

4   **CENTRAL DISTRICT OF CALIFORNIA**

5   **SOUTHERN DIVISION**

6

7   **MICHAEL ORLANDO,**                    **Case No.: SACV 13-1090 DOC(JPRx)**

8             **Plaintiff,**                **ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY JUDGMENT
9       **vs.**                             [40]; and GRANTING AND DENYING IN
                                             PART PLAINTIFF'S MOTION FOR**
10                                          **SUMMARY JUDGMENT [41]**

11  **LOS ALAMITOS RACING
    ASSOCIATION;**

12            **Defendant.**

13

14

15

16          Before the Court are Defendant's Motion for Summary Judgment ("D-Mot.") (Dkt. 40)

17  and Plaintiff's Motion for Summary Judgment ("P-Mot.") (Dkt. 41). After reviewing the papers,

18  the Court GRANTS IN PART both Motions.

19      **I.  Background**

20          **A.  Facts**

21          This lawsuit arises from Plaintiff Michael Orlando's allegation that Defendant Los

22  Alamitos Racing Association has violated the Americans with Disabilities Act (ADA) because

23  there is no wheelchair accessible path of travel from the parking lot to the main entrance of the

24  Clubhouse at the Los Alamitos racetrack, which is located at the south side of the grandstand

25  ("Southern Entrance"). Defendant either owns, leases, or exercises operative control over the

26  Los Alamitos racetrack, including the Clubhouse, and that the Los Alamitos racetrack, including

27

28

the Clubhouse, is a business establishment and a place of public accommodation. P-SUF Nos. 3, 4.[1]

Plaintiff has been going to the Los Alamitos racetrack for over 20 years. On most of those visits, Mr. Orlando has patronized the Clubhouse portion of the grandstand at the Los Alamitos Track. Declaration of Michael Orlando ¶ 3 ("Orlando Decl.") (Dkt. 41-2). The Southern Entrance to the Clubhouse has multiple sets of stairs leading up to the entrance. The stairs go up a vertical distance of approximately 8 feet. D-SUF No. 8. There is no elevator or lift which services this entrance. P-SUF No. 6. Plaintiff states that he experienced great difficulty navigating the stairs. He could not use his walker because the walker would not fit on the stairs. He instead had to use his cane. He fell and injured himself, causing him difficulty, discomfort, and embarrassment. Orlando Decl. ¶ 4.

An alternative route to the Clubhouse is accessed by entering the front gate, entering the ground floor of the grandstand, turning left or right down a hallway, taking an elevator to the second floor, and crossing the floor to an interior door which leads to the Clubhouse ("Interior Door"). P-SUF No. 8. Due to the un-ramped stairs located at the Southern Entrance, in order to access the Clubhouse, a disabled patron must either climb the stairs or use the alternative route to the Interior Door. P-SUF No. 9.

The Interior Door is kept locked so that admission to the Clubhouse is restricted to those customers who purchase the separate admission to the Clubhouse. The Interior Door will be opened by an attendant for any person who has purchased separate admission to the Clubhouse, to allow the person to enter the Clubhouse. A person in a wheelchair who has paid the separate admission fee for the Clubhouse and who wishes to visit the Clubhouse is escorted up the elevator to the Clubhouse door, where the escort and any security personnel will open the entrance door to allow admission to the Clubhouse for the person in the wheelchair. D-SUF Nos. 19, 20.

---

[1] For ease of reference, the Court will refer to Plaintiff's Statement of Uncontroverted Facts (Dkt. 41-1) as "P-SUF." The Court will refer to Defendant's Statement of Uncontroverted Facts (Dkt. 40-2) as "D-SUF.".

Plaintiff states that, due to the un-ramped stairs at the Southern Entrance and the locked Interior Door, he has been unable to return to the Los Alamitos track for some time. He wishes to return and attend regularly again, once the violations are removed. Orlando Decl. ¶¶ 7-8.

### B. Procedural History

Plaintiff filed suit in this Court on July 19, 2013. *See* Compl. (Dkt. 1). The Complaint[2] originally alleged three causes of action:

(1) Violation of Americans with Disabilities Act of 1990;

(2) Violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53; and

(3) Violation of the California Disabled Persons Act, §§ 54-54.8.

On June 24, 2014, the Court construed Defendant's motion for judgment on the pleadings as a motion for the Court to decline supplemental jurisdiction over the two state law claims. Since Plaintiff did not file an opposition, the Court granted the motion as unopposed and dismissed Plaintiff's second and third causes of action. *See* Order on Pending Motions, May 28, 2014 (Dkt. 28), at 2. Thus, the one remaining claim is the ADA claim.[3]

The parties filed their respective motions for summary judgment on December 22 and 29, 2014 (Dkts. 40, 41). Defendant filed an opposition to Plaintiff's motion on January 5, 2015 (Dkt. 43) and Plaintiff filed a reply on January 12 (Dkt. 45). Plaintiff filed a late opposition to Defendant's motion on January 19 (Dkt. 52). Oral argument on both Motions was held on January 26 (Dkt. 53).

---

[2] The docket contains some references to a First Amended Complaint. *See* Answer to Pl.'s First Am. Compl. (Dkt. 32); Stipulation & Order to Strike Portions of Pl.'s First Am. Compl. (Dkt. 38). However, there is no first amended complaint actually on the docket or in the Court's paper files. It appears that no first amended complaint was actually filed, although it appears to have been served on Defendant.

[3] Defendant's Motion reflects some uncertainty about whether, in his First Amended Complaint, Plaintiff is alleging his ADA claim based solely on the lack of an accessible path of travel between the parking lot and the Clubhouse or whether Plaintiff is also alleging his ADA claim based on the height of the betting windows at the main betting counter. As mentioned in footnote 2, no First Amended Complaint has actually been filed so the Court has not been able to review what the First Amended Complaint states. Plaintiff's original complaint contained an allegation that the betting windows were not accessible because they were too high for a wheelchair user to reach. Compl. ¶ 14. However, the section on the ADA cause of action focuses on the lack of a ramp. Assuming that this has not changed in the First Amended Complaint, the Court is satisfied that Plaintiff only alleged an ADA claim based on the lack of an accessible path of travel, not based on the betting windows. Accordingly, the Court does not address Defendant's argument about the height of the betting counters.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**B.  ADA**

Pursuant to Title III of the ADA, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)).

**III.   Discussion**

Plaintiff seeks summary judgment on all three elements. Defendant concedes that the second element is met, but vigorously disputes the first and third elements. Defendant seeks summary judgment on the issue and cross-moves for summary judgment that Plaintiff cannot meet the first and third elements. Additionally, Defendant argues that Plaintiff lacks standing to assert his ADA claim. The Court first addresses standing and then the first and third elements.

**A.  Plaintiff Has Article III Standing**

Defendant argues that Plaintiff lacks Article III standing to bring his ADA claim.

[A] plaintiff in an ADA barriers case satisfies the injury requirement of standing if he has encountered barriers at the defendant's premises and is deterred from patronizing the facility because of those barriers. *See Doran,* 506 F.3d at 1195-96 ("Doran has suffered an injury that is concrete and particularized because he alleged that he personally suffered discrimination as a result of the barriers in place during his visits to 7-Eleven and that those barriers have deterred him from continuing to patronize the store."); *Pickern,* 293 F.3d at 1137-38 ("We hold that in stating that he is currently deterred from attempting to gain access to the

Paradise store, Doran has stated sufficient facts to show concrete, particularized injury.").

*Bodley v. Macayo Restaurants, LLC*, 546 F. Supp. 2d 696, 702 (D. Ariz. 2008).

Here, Plaintiff has visited the Clubhouse many times. *See* Orlando Decl. ¶ 3. He is deterred from patronizing the Clubhouse because of his difficulty navigating the stairs at the Southern Entrance and using the alternate route through the Interior Door. *Id.* ¶¶ 4, 5, 7, 8; Orlando Dep. 25:24-26:11, July 14, 2014. Accordingly, Plaintiff has Article III standing to bring this suit. Defendant's arguments that Plaintiff has suffered no harm because he is not actually disabled and because he chooses to use the stairs instead of asking a staff member to escort him up the elevator and through the Interior Door are better directed at the elements of Plaintiff's claim.

### B.  Whether Plaintiff is Disabled Within the Meaning of the ADA

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1). Plaintiff argues that he meets the (1)(A) standard because he cannot walk without the use of a walker or a cane and he also uses a wheelchair for mobility. Defendant responds that Plaintiff has not presented sufficient evidence that he has a disability.

Plaintiff presents two pieces of evidence that he is disabled within the meaning of the ADA. First is his own declaration which states, "Due to a spinal cord injury that is progressively worsening, I am severely limited in my ability to ambulate. I mainly use a walker or cane for mobility. I cannot walk more than 5 to 6 feet without a walker. I also use a wheelchair from time to time." Orlando Decl. ¶ 2. Second is deposition testimony from Plaintiff's expert witness Paul Bishop that he observed Plaintiff using a wheelchair at the racetrack. Bishop Dep. 26:5-9, Dec. 1, 2014.

Defendant argues that Plaintiff's statement about his spinal injury lacks foundation because Plaintiff is not a doctor. Assuming *arguendo* that Plaintiff's statement was inadmissible, lack of medical testimony does not necessarily foreclose a plaintiff from proving that he has a

disability, although it does make the issue a closer call for the factfinder. *See Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996).

Defendant argues that Plaintiff cannot use his declaration to contradict his previous deposition testimony. Plaintiff testified at his deposition that he uses his wife's walker and wheelchair, not his own; that Plaintiff does not use a wheelchair at the racetrack; and that Plaintiff cannot recall the origin of the handicap hang tag that his friends use when they drive him to the racetrack. Orlando Dep. 19:15-19; 19:24-20:18. Plaintiff also testified at his deposition that he has never asked a racetrack employee for assistance to get into the Clubhouse. *Id.* 29:18-30:16. These statements do not directly contradict Plaintiff's declaration, however; rather, these go to attacking Plaintiff's credibility. "[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

Because Defendant does not offer any affirmative evidence to contradict a finding of disability, the Court finds that there is no genuine issue of material fact as to whether Plaintiff has a disability. Accordingly, summary judgment on this element is GRANTED in Plaintiff's favor.

### C.  Whether Plaintiff Was Denied Public Accommodations Because of His Disability

The ADA provides that "discrimination includes . . . a failure to remove architectural barriers . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), that is, where removal is "easily accomplishable and able to be carried out without much difficulty or expense," *id.* § 12181(9). "[W]here an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable," discrimination also includes "a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." *Id.* § 12182(b)(2)(A)(v). To determine if an "architectural barrier" exists, courts turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). *Id.* at 973. If an element does not meet or exceed ADAAG standards, it

is considered a barrier to access. *Id.* The ADAAG standards provide that "[a]t least one accessible route shall connect accessible buildings, facilities, elements, and spaces that are on the same site." 1991 Standards § 4.3.2; *see also* 2010 Standards § 206.2.1.[4]

When enacted, the ADA provided different standards for grandfathered facilities versus newly constructed or altered facilities. Facilities that are altered "in a manner that affects or could affect the usability of the facility or part thereof" must make alterations such that the altered portions of the facility are "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs," "to the maximum extent feasible." 42 U.S.C. § 12183(a)(1). ADA regulations provide that a public accommodation must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities . . ." 28 C.F.R. § 36.211.

> [I]t is not sufficient to provide features such as accessible routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them. Inoperable elevators, *locked accessible doors*, or "accessible" routes that are obstructed by furniture, filing cabinets, or potted plants are neither "accessible to" nor "usable by" individuals with disabilities.

28 C.F.R. § Pt. 36, App. C § 36.211 (emphasis added). The U.S. Department of Justice's Technical Assistance Manual (DOJ-TAM) states that "accessible doors must be unlocked when the place of public accommodation is open for business." DOJ-TAM § III-3.7000.

### 1.  Installing a Ramp at the Southern Entrance Stairs is Not Readily Achievable

Plaintiff argues that Defendant has failed to maintain an accessible path of travel between the parking lot and the southern entrance of the Clubhouse because (1) there are un-ramped stairs leading from the parking area up to the Southern Entrance and (2) the alternative route leading to the Interior Door is blocked because the Interior Door is normally kept locked during business hours. It is beyond dispute that the stairs impede disabled individuals' access to the

---

[4] The 1991 ADAAG Standards are found at 28 C.F.R., Part 36, Appendix D and the 2010 ADAAG Standards are found at 36 C.F.R., Part 1191, Appendices B and D.

Clubhouse. Defendant argues that building a ramp or elevator at the Southern Entrance is not readily achievable. Having considered Defendant's evidence and noted Plaintiff's lack of opposition to Defendant's motion for summary judgment on this issue, the Court GRANTS summary judgment in Defendant's favor—building a ramp or elevator at the Southern Entrance is not readily achievable.

## 2. Whether Defendant Failed to Make the Clubhouse Available Through Alternative Methods

Even if Defendant need not build a ramp because it is not readily achievable, Defendant can still be held liable under the ADA for "failure to make [the Clubhouse] available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v). Plaintiff argues that Defendant is liable under § 12182(b)(2)(A)(v) because Defendant keeps the Interior Door unlocked during business hours when unlocking the Interior Door during business hours is readily achievable. Defendant responds that its current practice of having staff escort wheelchair-bound patrons and unlock the Interior Door upon request is enough to create an accessible path of travel from the parking lot to the Clubhouse for individuals who cannot climb the Southern Entrance stairs, such that it does not need to keep the door unlocked. For the reasons below, the Court grants summary judgment in Defendant's favor.

Here, Defendant makes the Clubhouse available to patrons with disabilities by having its staff escort them up the elevator and unlock the Interior Door upon request. Plaintiff has not shown that this alternative is ineffective at providing access. For instance, there is nothing in the record showing that it takes an inordinate amount of time to get assistance or that Defendant does not alert disabled patrons that assistance is available. Thus, Plaintiff has not met his burden of showing that Defendant failed to make the Clubhouse available to patrons with disabilities.

Having to request assistance is obviously not as desirable as being able to go through a door on one's own. However, the ADA generally takes into account the reasonableness of the modifications and accommodations that a defendant is being required to make. *See id.* § 12182(b)(2)(A)(ii) (defining discrimination as including "failure to make reasonable modifications in policies, practices, or procedures . . . unless the entity can demonstrate that

making such modifications would fundamentally alter the nature of [the] goods, services, facilities, privileges, advantages, or accommodations"); *id.* § 12182(b)(2)(A)(iii) (defining discrimination as including "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded . . . unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden"). Federal regulations provide that having employees assist in making goods and services available is an acceptable alternative to barrier removal. *See* 28 C.F.R. § 36.305(b)(2) (listing "[p]roviding curb service or home delivery" and "[r]etrieving merchandise from inaccessible shelves or racks" as examples of an alternative to barrier removal). Plaintiff has not provided legal authority that the Court is compelled to enjoin a defendant to implement plaintiff's alternative method of choice when Defendant already provides a reasonable method of accessing its facilities.

Accordingly, the Court concludes that Defendant cannot be held liable under the ADA for failing to implement Plaintiff's alternative method of choice when Defendant already provides an alternative method of accessing the Clubhouse. *See Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 630 (D. Md. 2002). Summary judgment is GRANTED in Defendant's favor.

**IV. Disposition**

For the reasons discussed above, the Court DISMISSES Plaintiff's ADA claim with prejudice. All pending dates are VACATED. Defendant shall file a proposed final judgment on or before **February 13, 2015**.

DATED:        January 28, 2015

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE